IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

GLOBAL DEMOLITION & RECYCLING, LLC,

Debtor.

Chapter 11

Case No. 10-10026 (MFW)

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF GLOBAL
DEMOLITION & RECYCLING, LLC AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF THE ESTATE OF GLOBAL DEMOLITION &
RECYCLING, LLC**

February 28, 2011

Donna L. Harris (DE No. 3740)
Pinckney, Harris & Weidinger, LLC
1220 North Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 telephone
(302) 442-7046 facsimile
*Attorneys for the Debtor*

Shannon D. Leight (DE No. 4115)
Ciardi, Ciardi & Astin
919 Market Street, Suite 700
Wilmington, Delaware 19803
(302) 658-1100 telephone
(302) 658-1300 facsimile
*Attorneys for the Committee*

# INTRODUCTION

Global Demolition & Recycling, LLC, debtor and debtor in possession in the above-captioned Chapter 11 case, together with the Official Committee of Unsecured Creditors of the Estate of Global Demolition & Recycling, LLC, hereby propose this Joint Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code. Reference is made to the Disclosure Statement Regarding Debtor's Joint Plan of Reorganization (the "Disclosure Statement" of even date, which provides important information necessary for creditors to vote on this Plan.

All creditors entitled to vote on this plan should review the Disclosure Statement before voting to accept or reject this Plan. Documents referenced in this Plan and/or the Disclosure Statement are also available for review.

# ARTICLE I - DEFINITIONS

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. For the purposes of this Plan, the following terms (which appear in this Plan with initial capitalized letters) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context requires otherwise:

1.1.    An **"Administrative Claim"** shall mean a Claim for an administrative expense of the Debtor, arising during the period commencing on the Petition Date and ending on the Effective Date under §§ 503(b) or 507(b) of the Bankruptcy Code, and entitled to priority under §§ 507(a)(1) or 503(b) of the Bankruptcy Code, including but not limited to (i) any actual and necessary costs or expenses of preserving the Estate or conducting the business of the Debtor, (ii) administrative expenses previously allowed by the Bankruptcy Court, (iii) any Priority Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date, (iv) Professional Fee Claims, and (v) all fees and charges assessed against the Debtor pursuant to 28 U.S.C. § 1930.

1.2.    An **"Administrative Claim Request"** means a request for allowance and/or payment of an Administrative Claim (excluding a Professional Fee Claim).

1.3.    The **"Administrative Claim Request Deadline"** means the date set as the deadline for filing an Administrative Claim Request (excluding Professional Fee Claims), which shall be January 27, 2011, at 4:00 p.m.

1.4.    **"Arillotta"** means Albert Arillotta, who is the sole and managing member of the Debtor.

1.5.    **"Allowed"** means a Claim: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent, or unliquidated and (b) as to which no Proof of Claim has been filed; or (ii) as to which a timely Proof of Claim has been filed as of the relevant Bar Date, other than a Proof of Claim reflecting a contingent or unliquidated Claim, and no objection thereto, or application to equitably subordinate, recharacterize, estimate or otherwise limit recovery, has been

made; or (iii) as to which a timely Administrative Claim Request has been filed as of the Administrative Claim Request Deadline and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made, or (iv) that has been allowed by a Final Order; provided, however, that prior to the deadline imposed by this Plan to file objections to a given Claim, as the same may be extended, no Claim shall be treated as Allowed to the extent that it is filed by the holder of such Claim (x) in an amount greater than the amount listed for such Claim by the Debtor in its Schedules, (y) asserting a priority higher than the priority listed for such Claim by the Debtor in its Schedules, or (z) asserting the existence of collateral to secure such Claim to the extent that such Claim is listed by the Debtor in its Schedules as unsecured.

1.6.     An **"Allowed Claim"** means a Claim which is Allowed.

1.7.     **"Arillotta Unsecured Claim"** means any unsecured Claim against the Estate held by Albert Arillotta, however arising, including from the rejection of an executory contract or an unexpired lease, but which is not an Administrative Claim, Priority Tax Claim, Priority Unsecured Claim, TD Bank Claim, or Secured Claim.

1.8.     A **"Ballot"** means the form or forms distributed to each Holder of an Allowed Claim in an Impaired Class entitled to vote on this Plan upon which the Holder may indicate acceptance or rejection of this Plan or any election for treatment of such Claim under this Plan.

1.9.     The **"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots must be received by the Debtor's balloting agent.

1.10.     The **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the date hereof.

1.11.     The **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware and any other court that exercises jurisdiction over the Chapter 11 Case.

1.12.     The **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure applicable to the Chapter 11 Case and the Local Rules of the Bankruptcy Court, each as in effect from time to time.

1.13.     A **"Bar Date"** means, as applicable: (i) any deadline established by a Bar Date Order for the filing of any prepetition Claim against the Debtor, and (ii) with respect to any Executory Contract rejected by the Debtor, the later of any deadline set in that Final Order for the filing of a proof of claim asserting any rejection damages and the deadline established by any Bar Date Order for the filing of a proof of claim asserting any rejection damages. The Plan does not extend any date established by any other Final Order, and the earliest date applicable to the filing of a Claim shall govern.

1.14.     A **"Bar Date Order"** means any order of the Bankruptcy Court establishing a deadline for the filing of any proof of claim or other request for allowance and/or payment of any Claim against the Estate.

1.15.     A **"Business Day"** means any day except a Saturday, Sunday or a "legal holiday," as such term is defined in Fed. R. Bankr. P. 9006(a).

1.16.     **"Cash"** means cash or cash equivalents in certified or immediately available funds, including but not limited to bank deposits, checks, and similar items.

1.17.     A **"Chapter 5 Claim"** means any and all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code.

1.18.     The **"Chapter 11 Case"** means the bankruptcy case of the Debtor pending in the Bankruptcy Court and docketed as Case No. 10-10026 (MFW).

1.19.     A **"Claim"** means a "claim," as such term is defined in § 101(5) of the Bankruptcy Code, whether or not filed or scheduled in the Chapter 11 Case, and, except as otherwise provided in the context, means a claim against a Debtor or the Debtor's Estate.

1.20.     A **"Class"** means a group of Claims or Interests as established under Article III and Article IV of the Plan pursuant to § 1122 of the Bankruptcy Code.

1.21.     "**Collateral**" means any property which is pledged as security with respect to a Secured Claim.

1.22.     The **"Confirmation Hearing"** means the hearing pursuant to Fed. R. Bankr. P. 3020(b) at which the Bankruptcy Court considers confirmation of this Plan, as such hearing may be continued from time to time.

1.23.     The **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.24.     A **"Cramdown Plan"** means this Plan if confirmed by the Bankruptcy Court pursuant to § 1129(b) of the Bankruptcy Code.

1.25.     A **"Creditor"** means a "creditor," as such term is defined in § 101(10) of the Bankruptcy Code.

1.26.     A **"Committee"** means the Official Committee of Unsecured Creditors of the Estate of the Debtor.

1.27.     A **"De Minumus Distribution"** means a distribution to be made in accordance with the terms of this Plan that is $25.00 or less.

1.28.     The **"Debtor"** means Global Demolition & Recycling, LLC. On and after the Effective Date, the "Debtor" shall also mean and include the Reorganized Debtor, as the context may require. To the extent that any affiliate(s) of the Debtor shall, on or before the Effective Date, become a debtor in bankruptcy, the "Debtor" shall also mean and include such affiliate(s), provided that both the Debtor and such affiliate(s) file a notice consenting to such inclusion.

1.29.     **"Deficiency Claim"** means the unsecured portion of any Class 1 or Class 2A or 2B Claim.

1.30.    A **"Disallowed Claim"** means a Claim or any portion thereof that (i) has been disallowed by Final Order, (ii) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, or (iv) has been withdrawn by the Holder thereof.

1.31.    The **"Disbursing Account"** means an interest-bearing escrow account to be established by the GDR Trustee for the purpose of (i) holding cash received from the Reorganized Debtor and/or proceeds of Chapter 5 Claims and (ii) making distributions under this Plan to Holders of Allowed Class 4 Claims.

1.32.    The **"Disclosure Statement"** means the disclosure statement (and any exhibits) that relates to this Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, as such disclosure statement may be amended, modified, or supplemented from time to time.

1.33.    A **"Disputed Claim"** means (a) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Claims Objection Deadline, which objection has not been withdrawn or overruled by Final Order, (b) any Claim for which a Proof of Claim is filed after the Bar Date, (c) any unliquidated Claim, or (d) except as provided in the definition of Allowed General Unsecured Claims, up to the Claims Objection Deadline, (i) a Claim for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated, (ii) a Claim which the Debtor in good faith believes is held by a Holder either (A) from which property is recoverable by the Debtor under any of §§ 542, 543, 550 or 553 of the Bankruptcy Code or (B) that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code unless the Holder has paid the amount, or turned over any such property for which such Holder is liable under the terms of §§ 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  To the extent that an objection relates to the allowance of part of a Claim, such Claim shall be treated as a Disputed Claim as to the entire Claim, unless otherwise determined by the Bankruptcy Court.

1.34.    The **"Effective Date"** means the Business Day on which this Plan becomes effective pursuant to Article X of this Plan; provided however, that if any stay or injunction against enforcement or execution of the Confirmation Order is issued prior to the date that would otherwise be the Effective Date, the Effective Date shall be the first Business Day after all such stays or injunctions are no longer in effect.

1.35.    An **"Entity"** has the meaning set forth in § 101(15) of the Bankruptcy Code.

1.36.    The **"Estate"** means the estate created by the commencement of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code with respect to the Debtor.

1.37.    An **"Executory Contract"** means any executory contract or unexpired lease (as of the Petition Date) between the Debtor and any other Entity.

1.38.    A **"Fee Application"** means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for approval of compensation and/or reimbursement of out-of-pocket expenses in connection with a Professional Fee Claim.

1.39.    The **"Final Decree"** means the decree contemplated under Fed. R. Bankr. P. 3022.

1.40.    A **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, entered on the applicable docket, that has not been reversed, rescinded, stayed, modified or amended, that is in full force and effect, and with respect to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; (b) any right to appeal, seek review or rehearing, or petition for certiorari has been waived in writing; or (c) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought. Notwithstanding and in lieu of the foregoing, with respect to the Confirmation Order, Final Order means only such order or judgment that has been entered on the docket and as to which no stay is in effect.

1.41.    The **"GDR Trust"** means that certain trust established pursuant to the terms of the Plan for the benefit of the Holders of Allowed Class 4 Claims.

1.42.    The **"GDR Trust Agreement"** means that certain trust agreement which will establish and govern the GDR Trust, substantially in the form attached hereto as "Exhibit 1."

1.43.    The **"GDR Trustee"** means the trustee of the GDR Trust.

1.44.    A **"General Unsecured Claim"** means any unsecured Claim against the Estate, however arising, including from the rejection of an executory contract or an unexpired lease, but which is not an Administrative Claim, Priority Tax Claim, Priority Unsecured Claim, TD Bank Claim, or Secured Claim.

1.45.    A **"Holder"** means the beneficial owner or owners of any Claim, Interest, or Administrative Claim, which, in the case of an investment company, shall be the investment company and not its stockholders, and which in the case of an insurance company, shall be the insurance company and not its insured. Where there are multiple legal or beneficial owners of any Claim, Interest or Administrative Claim, all such Entities collectively shall comprise a single Holder for purposes of this Plan.

1.46.    **"Impaired"** means, with respect to any Claim, "impaired," as such term is defined in § 1124 of the Bankruptcy Code.

1.47.    An **"Interest"** means, with respect to the Debtor, any "equity security," as such term is defined in § 101(16) of the Bankruptcy Code and shall also include, without limitation, all

stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any shares of stock in the Debtor.

1.48. **"IRC"** means the Internal Revenue Code of 1986, as amended.

1.49. The **"IRS"** means the Internal Revenue Service.

1.50. A **"Lien"** means any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt, or litigation.

1.51. A **"Litigation Claim"** means any and all claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of § 541 of the Bankruptcy Code, except Chapter 5 Claims.

1.52. The **"New LLC Agreement"** means Certificate of Formation, Articles of Organization, and Operating Agreement for the Reorganized Debtor to be filed with the Delaware Secretary of State, along with all applicable filing fees.

1.53. A **"Person"** has the meaning set forth in § 101 of the Bankruptcy Code.

1.54. The **"Petition Date"** means January 6, 2010.

1.55. The **"Plan"** means this plan (either in its present form or as it may be amended or modified from time to time), and any documents incorporated herein by reference.

1.56. A **"Priority Tax Claim"** means a Claim held by a governmental unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest, but only to the extent that such Claim is entitled to priority pursuant to §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

1.57. A **"Priority Unsecured Claim"** means an unsecured Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim, but only to the extent that such Claim is entitled to priority pursuant to § 507(a) of the Bankruptcy Code.

1.58. A **"Professional"** means (i) any Entity employed by the Debtor or any Committee pursuant to a Final Order in accordance with § 327 and/or § 1103 of the Bankruptcy Code.

1.59. A **"Professional Fee Claim"** means all fees and expenses incurred from the Petition Date through the Effective Date that are or may be asserted by Professionals retained by the Debtor or the Committee.

1.60. A **"Proof of Claim"** means a proof of claim filed in the Chapter 11 Case pursuant to section 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with any and all supporting documents.

1.61.    **"Pro Rata"** means in proportion to the total, so that, for example, the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

1.62.    A **"Pro Rata Share"** means a share which is Pro Rata.

1.63.    **"Released Parties"** means the Debtor, the Estate, the Reorganized Debtor, the Disbursing Agent, the Committee and each of their respective present or former members, managers, employees, agents, representatives, financial advisors, attorneys, accountants, predecessors, successors, and assigns.

1.64.    A **"Releasor"** means each Holder of a Claim or Interest, whether or not such Claim is Impaired or Unimpaired under the Plan and whether or not such Claim has been scheduled, filed, or otherwise asserted or preserved in the Chapter 11 Case.

1.65.    The **"Reorganized Debtor"** means the corporation identified as such in § 6.1 of the Plan.

1.66.    **"Scheduled"** means, with respect to any Claim, such Claim as listed on the Schedules.

1.67.    The **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs, as may be amended from time to time, filed by the Debtor with the Bankruptcy Court, pursuant to § 521(a) of the Bankruptcy Code and Fed. R. Bankr. P. 1007(b).

1.68.    A **"Secured Claim"** means a Claim, other than the TD Bank Claim, a proof of claim for which has been timely filed in the Chapter 11 Case, that is secured by a valid and unavoidable Lien on property in which the Estate has an interest, to the extent of the value of the Holder's interest in the Estate's interest in such property, or that is subject to recoupment or an unavoidable right of setoff under § 553 of the Bankruptcy Code to the extent of the amount subject to recoupment or setoff, as applicable, as determined by the Bankruptcy Court pursuant to §§ 506(a), 553, and/or 1129(b)(2)(A)(i)(II), as applicable.

1.69.    "**SL Secured Claim**" means a secured claim of SL Financial Services and/or its successor(s) in interest ("SL").

1.70.    The **"Supplemental Plan Documents"** means, collectively, the documents included (or to be included) in the supplemental appendices to the Plan and filed with the Bankruptcy Court at least ten (10) days before the Confirmation Hearing.

1.71.    **"TD Bank Secured Claim"** means a secured Claim of TD Bank, N.A. and/or its successor(s) in interest ("TD").

1.72.    An **"Undeliverable Distribution"** means a distribution that is returned to the Reorganized Debtor by the U.S. Postal Service and marked as "Undeliverable," or a similar notation indicating that the distribution could not be delivered to the Creditor at such address.

1.73.     The **"U.S. Trustee"** means the United States Trustee for Region 3.

1.74.     **"U.S. Trustee Fees"** means the fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930.

## ARTICLE II - TREATMENT OF ADMINISTRATIVE
## CLAIMS, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

As provided in § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified for the purposes of voting or receiving distributions under this Plan. All such Claims shall be treated separately as unclassified Claims by the terms set forth in this article.

### 2.1     Administrative Claim

Unless the Holder of an Administrative Claim agrees to a different treatment of such Claim, the Reorganized Debtor shall pay each Holder of an unpaid Allowed Administrative Claim the full amount thereof, without interest, as soon as reasonably practicable after the later of (i) the Effective Date, or (ii) thirty (30) days after such Administrative Claim becomes an Allowed Claim. Certain Holders of Administrative Claims and the respective amounts of their Administrative Claims are identified in the Disclosure Statement. Each Holder of an Administrative Claim that is not identified in the Disclosure Statement or that seeks allowance of an Administrative Claim in a different amount than the amount identified in the Disclosure Statement must file with the Bankruptcy Court an Administrative Claim Request for allowance and payment of such Administrative Claim on or before the Administrative Claim Request Deadline; provided, however, that any such Administrative Claim Request shall not be noticed for a hearing by the claimant. Nothing herein extends any Bar Date established in any Bar Date Order. Any Holder of an Administrative Claim that fails to comply in a timely manner with the Administrative Claim Request Deadline shall be forever barred from asserting such Claim against the Debtor, the Reorganized Debtor, or any property of the Debtor or of the Reorganized Debtor and from sharing in any distribution under the Plan on account of such Administrative Claim, except to the extent set forth in the Disclosure Statement, if at all. Notwithstanding anything herein to the contrary, the Debtor (if prior to or on the Effective Date) and the Reorganized Debtor (if after the Effective Date) may pay, without approval from the Bankruptcy Court, any expenses of administering the Debtor's Estate in the ordinary course of business.

### 2.2     Professional Fee Claims

(a)     Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtor and the Reorganized Debtor and counsel for the Committee at the addresses listed in Article 12.13 of this Plan and on the U.S. Trustee no later than thirty (30) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, the Reorganized Debtor, and their successors, their assigns, or their Assets, unless the Reorganized Debtor agrees otherwise in its sole and absolute discretion.

(b)     Unless the Holder of a Professional Fee Claim agrees to a different treatment of such Claim, the Reorganized Debtor shall pay each Holder of an unpaid Professional Fee Claim the full amount thereof, without interest, as soon as reasonably practicable after the later of (i) the Effective Date, or (ii) thirty (30) days after such Professional Fee Claim becomes an Allowed Claim pursuant to entry of an Order awarding it in accordance with § 330.

2.3     **Priority Tax Claims**

Pursuant to § 1129(a)(9) of the Bankruptcy Code, the Reorganized Debtor shall pay each Holder of an Allowed Priority Tax Claim in Cash as soon as soon as reasonably practicable after the later of (A) the Effective Date, or (B) thirty (30) days after such Priority Tax Claim becomes an Allowed Claim, together with interest thereon (if and only to the extent required) at the applicable statutory rate required for such Claim in Chapter 11 cases.  Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, such Claims.  Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of this Plan.

## ARTICLE III – SUMMARY OF CLASSES AND GENERAL RULES

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Fee Claims, and Priority Tax Claims, as described in Article II, have not been classified and thus are excluded from the Classes that follow. The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with § 1126 of the Bankruptcy Code or deemed to reject this Plan.

3.1     **Summary**

As required by the Bankruptcy Code, this Plan places Claims and Interests into various Classes according to their right to priority and other relative rights.  Article III identifies the Classes of Claims and Interests and whether those Claims and Interests are Impaired.  Article IV hereof explains how each Claim and Interest is classified and will be treated. The categories of Claims and Interests listed below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to this Plan.

3.2     **Classification**

Claims against the Debtor shall be classified as specified below (other than Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 2 above).  Consistent with § 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class. The following Classification of Claims and Interests shall govern:

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| Unclassified | Administrative Claims, Fee Claims, and Priority Tax Claims against all Debtors. | Unimpaired; not classified for voting or distribution purposes |
| Class 1 | Class 1 consists of the TD Bank Secured Claim | Unimpaired |
| Class 2A | Class 2A consists of Secured Claims (other than the TD Bank Secured Claim and the SL Secured Claim) | Impaired |
| Class 2B | Class 2B consists of the SL Secured Claim | Impaired |
| Class 3 | Class 3 consists of Priority Unsecured Claims | Unimpaired |
| Class 4 | Class 4 consists of General Unsecured Claims | Impaired |
| Class 5 | Class 5 consists of Arillotta Unsecured Claims | Impaired |
| Class 6 | Class 6 consists of all Interests in the Debtor | Impaired |

3.3 **General Rules of Classification**

Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released, or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes except as expressly provided. For voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

## ARTICLE IV – CLASSIFICATION OF CLAIMS AND INTERESTS AND TREATMENT THEREOF

4.1 **TD Bank Secured Claim (Class 1)**

Class 1 is Unimpaired with the consent and agreement of TD Bank, and consists of all Secured Claims of TD Bank and/or its successor(s) in interest. TD Bank, as the holder of a Class 1 Claim, shall receive thirty-six (36) payments of $5,000.00 on the first Business Day of each

month in principal (in addition to ongoing payments of interest) in Cash, beginning with the first month to begin after the Effective Date.  On the first Business Day of the thirty-seventh month after the Effective Date, TD Bank shall receive a final payment of $68,559.15.

4.2    **Secured Claims (Class 2)**

4.2.1    **Class 2A.**  Class 2A is Impaired and consists of all Secured Claims other than the TD Bank Secured Claim and SL Secured Claim.  Unless the Holder of an Allowed Class 2A Claim and the Debtor or the Reorganized Debtor, as applicable, agree to a different treatment, the Reorganized Debtor shall pay each Holder of an Allowed Class 2A Claim an amount equal to the value of the Collateral securing such Allowed Class 2A Claim as of the Petition Date, less any payments made after the Petition Date but prior to the Effective Date, in thirty-six (36) equal Cash payments, with interest, on the first Business Day of each month beginning with the first month to begin after the Effective Date.  The Holder of an Allowed Class 2A Claim will continue to hold a lien on the Collateral until all payments are made in full in accordance with this Paragraph 4.2.1.  Notwithstanding the foregoing, the holder of an Allowed Class 2A Claim may receive such other Less Favorable Treatment as may be agreed to by the holder of such Claim and the Reorganized Debtor.

4.2.2    **Class 2B.**  Class 2B is Impaired, but has been set up with the consent and agreement of SL, and consists of all Secured Claims of SL and/or its successor(s) in interest.  The Reorganized Debtor shall pay each Holder of an Allowed Class 2B Claim the amount of $1,581,316.80, less any payments made after the Petition Date but prior to the Effective Date, in forty-eight (48) equal Cash payments, with interest at the rate of 5% per annum, on the first Business Day of each month beginning with the first month to begin after the Effective Date.  The Holder of an Allowed Class 2B Claim will continue to hold a Lien on its Collateral until all payments are made in full in accordance with this paragraph 4.2.2.  In the event the Reorganized Debtor fails to make a payment required by this paragraph 4.2.2., the Holder of the an Allowed Class 2B Claim shall have the same rights and remedies as to its Collateral that existed prior to the Petition Date.  The Holder of an Allowed Class 2B Claim shall not be entitled to any other Claim in any other Class, including but not limited to a Deficiency Claim pursuant to Class 4 of this Plan.  Notwithstanding the foregoing, the holder of an Allowed Class 2B Claim may receive such other Less Favorable Treatment as may be agreed to by the holder of such Claim and the Reorganized Debtor.

4.3    **Priority Unsecured Claims (Class 3)**

Class 3 is Unimpaired and consists of all Priority Unsecured Claims. Unless the Holder of an Allowed Priority Unsecured Claim and the Debtor or the Reorganized Debtor, as applicable, agree to a different treatment, the Reorganized Debtor shall pay each Holder of an Allowed Priority Unsecured Claim an amount equal to 100% of the unpaid amount of such Allowed Priority Unsecured Claim, in Cash, without interest, on or as soon as soon as reasonably practicable after the later of (A) the Effective Date, or (B) thirty (30) days after such Class 3 Claim becomes an Allowed Claim. Notwithstanding the foregoing, the holder of an Allowed

Class 3 Claim may receive such other Less Favorable Treatment as may be agreed to by the holder of such Claim and the Reorganized Debtor.

### 4.4 General Unsecured Claims (Class 4)

Class 4 is Impaired and consists of all General Unsecured Claims, including Deficiency Claims related to holders of Class 2A Allowed Claims only. Each Holder of an Allowed Class 4 Claim shall be paid 30% of its Allowed Class 4 Claim on a quarterly basis over three years in Cash in full satisfaction of such Claim, plus such Claim's Pro Rata Share of the proceeds of the Chapter 5 Claims to a maximum amount of 100% of the principle amount of such Allowed Class 4 Claim. The Pro Rata Share owed to Holders of Allowed Class 4 Claims shall be paid by the GDR Trust from the Disbursing Account. The 30% quarterly payments owed to Holders of Allowed Class 4 Claims out of the Disbursing Account is guaranteed by a security interest in the Reorganized Debtor's receivables granted in favor of the GDR Trust. To the extent that the GDR Trust recovers proceeds from the prosecution of Chapter 5 Claims which exceed 100% of Allowed Class 4 Claims (exclusive of interest and other fees), such excess proceeds shall be disbursed to the Reorganized Debtor. Notwithstanding the foregoing, the holder of an Allowed Class 4 Claim may receive such other Less Favorable Treatment as may be agreed to by the holder of such Claim and the Reorganized Debtor.

### 4.5 Arillotta Unsecured Claims (Class 5)

Class 5 is Impaired, but has been set up with the consent and agreement of Mr. Arillotta, and consists of all Arillotta Unsecured Claims. On the Effective Date, Albert Arillotta shall receive in exchange for his Allowed Class 5 Claims, and in exchange for his agreement to waive all rights to increase his salary for a period of three (3) years from the Effective Date, all of the equity in the Reorganized Debtor.

### 4.6 Interests (Class 6)

Class 6 is Impaired and consists of the Interests in the Debtor. On the Effective Date, each Holder of a Class 6 Interest shall not be entitled to, and shall not receive or retain any property or interest in property on account of, such Class 6 Interest. Class 6 Interests shall be extinguished as of the Effective Date.

## ARTICLE V - ACCEPTANCE OR REJECTION OF PLAN

### 5.1 Voting of Claims

Each Holder of an Allowed Claim classified in Class 2A, Class 2B, Class 4 and Class 5 (and only such Holders) shall be entitled to vote to accept or reject this Plan.

### 5.2 Acceptance by a Class

Consistent with § 1126(c) of the Bankruptcy Code and except as provided for in § 1126(e) of the Bankruptcy Code, a Class shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one half in number, of the holders of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

### 5.3 Presumed Acceptance of Plan

Pursuant to § 1126(f) of the Bankruptcy Code, Class 1 and Class 3 are unimpaired under the Plan and are conclusively presumed to accept the Plan.

### 5.4 Presumed Rejection of Plan

In accordance with § 1126(g) of the Bankruptcy Code, Class 6 is impaired under the Plan is conclusively presumed to reject the Plan.

### 5.5 Cramdown

With respect to Class 6, the Debtor is seeking confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code. To the extent that any other impaired Class(es) vote(s) to reject the Plan or does not otherwise accept the Plan, the Debtor reserves the right to seek confirmation pursuant to § 1129(b) of the Bankruptcy Code with respect to such Class(es) as well.

## ARTICLE VI - IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

### 6.1 Reorganized Debtor

(a) **Creation of Reorganized Debtor.** On or before the Effective Date, the Debtor shall create a limited liability company, incorporated under the laws of the State of Delaware, called "Global Recycling & Demolition, LLC" which shall be and constitute the "Reorganized Debtor" hereunder on the Effective Date.

(b) **Transfers to the Reorganized Debtor.** On the Effective Date, the Debtor and the Estate shall be deemed to have transferred and/or assigned to the Reorganized Debtor all of their assets, including but not limited to Cash and accounts, including but not limited to all monies held in escrow or separate segregated accounts during the pendency of the Chapter 11 Case. Thereafter, such transferred assets shall be deemed property of the Reorganized Debtor free and clear of all Claims, Liens, and contractually imposed restrictions, except for rights specifically preserved under the Plan. Any assets received by the Debtor after the Effective Date shall be treated, for all purposes, as if they had been received by the Debtor immediately prior to the Effective Date and shall be deemed transferred to the Reorganized Debtor as of the Effective Date.

(c) The Reorganized Debtor shall be governed by its articles of organization and bylaws, which shall contain such rules, obligations, rights, and provisions as shall be customary for a Delaware corporation in its industry.

(d) After the Effective Date, the Reorganized Debtor shall be permitted to operate its business and manage its affairs without supervision by the Bankruptcy Court. The Reorganized Debtor shall be permitted in its sole discretion to employ, retain, and pay compensation and reimbursement to such professionals as it deems appropriate, without being

required (and without such professionals being required) to obtain approval of the Bankruptcy Court therefor. The Reorganized Debtor shall cause to be filed such reports and disclosures as may be required by the U.S. Trustee under applicable law, but such reports and disclosures shall relate solely to the finances and affairs of the Debtor and the Estate and not to the Reorganized Debtor. The Reorganized Debtor shall pay, or cause the Debtor to pay, such statutory fees as shall be required under applicable law, but to the extent that such fees are calculated upon the disbursements of the Estate, such fees shall be measured by any disbursements of the Debtor and the Estate but not the Reorganized Debtor.

### 6.2 **Issuance of New Equity**

On the Effective Date, the Reorganized Debtor shall name as its sole member Albert Arillotta who shall have 100% of the voting and economic rights of the Reorganized Debtor. Further, on the Effective Date, the Reorganized Debtor shall file with the Delaware Secretary of State the New LLC Agreement.

### 6.3 **Litigation Claims**

(a) All Litigation Claims shall be retained by the Estate upon the Confirmation Date. Before the Effective Date, the Debtor may prosecute any or all Litigation Claims, and the Debtor may settle any Litigation Claims with Court approval. On the Effective Date, all remaining Litigation Claims shall be deemed transferred to the Reorganized Debtor and may thereafter be prosecuted, settled, or abandoned with or without Court approval by the Reorganized Debtor. Notwithstanding anything to the contrary herein, no distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtor or the Reorganized Debtor has taken action to recover, or given notice to the applicable party of intent to take such action, on a Litigation Claim against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Litigation Claim is resolved by Final Order or otherwise in accordance with this section.

(b) Any compromise or settlement of a Litigation Claim by the Debtor before the Effective Date shall be subject to approval of the Bankruptcy Court. After the Effective Date, the Reorganized Debtor shall not be required to (but may, in its sole discretion) seek approval of the Bankruptcy Court to commence, pursue, prosecute, settle, compromise, or abandon any Litigation Claim.

### 6.4 **Funding of the Plan**

(a) **Source of Distributions.** Distributions of Cash to be made pursuant to the Plan may be funded by any available source, including but not limited to funds held by the Debtor on the Effective Date, revenues generated through the Reorganized Debtor's operations, proceeds of the sale of the Reorganized Debtor's assets, collection of accounts receivable of the Debtor and the Reorganized Debtor and any other assets acquired by the Reorganized Debtor.

(b) **Segregation of Funds for Holders of Allowed Class 4 Claims.** Notwithstanding any contrary provision contained herein, the Reorganized Debtor shall turnover to the GDR Trust funds sufficient to pay 30% of Allowed Class 4 Claims.

6.5     **Exemption from Certain Transfer Taxes**

Pursuant to § 1146(c) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with, the Plan or the sale of any assets of the Debtor, including any deeds, bills of sale or assignments executed in connection with the Plan or at any time after the Confirmation Date, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge, or expense to the fullest extent provided for under § 1146(c) of the Bankruptcy Code.  All sales, leases, and other transfers of assets by or on behalf of the Debtor during the Chapter 11 Case were contemplated under the Plan and shall be construed to have been made under this Plan.  All orders approving the sale, lease, or other transfers of assets during the Chapter 11 Case shall be deemed preliminary approval of same, and the Confirmation Order shall be deemed final approval of all such sales, leases, and transfers.

6.6     **Employee Programs**

From and after the Effective Date, all of the Debtor's employee programs, including but not limited to any retirement plans or agreements and health benefits and disability plans, shall be assumed by the Reorganized Debtor in accordance with their terms.

6.7     **Non-cash Property**

All non-Cash assets or property of the Estate (other than collateral returned to the holder of a Secured Claim) not previously disposed of shall be deemed transferred to the Reorganized Debtor on the Effective Date, and thereafter may be transferred, sold, or otherwise liquidated or, if with respect to assets that, in the judgment of the Reorganized Debtor, are of inconsequential value, abandoned in any commercially reasonable manner, including but not limited to one or more charitable organizations designated by the Reorganized Debtor, without further order of the Bankruptcy Court. Notice of such sale, transfer, liquidation, or abandonment shall be provided to the Holders, if any, of Secured Claims asserting Liens on such assets or property.  Except in the case of willful misconduct or recklessness, no party in interest shall have a cause of action against the Debtor, the Reorganized Debtor, or their respective members, employees, consultants, managers, agents, representatives, attorneys, accountants, advisors, financial advisors, or professionals (in such capacity), arising from or related to: (a) the disposition of non-Cash assets or property in accordance with this Plan; or (b) the investment of any proceeds thereof by the Reorganized Debtor.

6.8     **Withdrawal of the Plan**

The Debtor reserves the right to revoke and withdraw, or to modify, the Plan in accordance with §§ 11.2 and 13.1 hereof at any time before the Effective Date. If the Debtor revokes or withdraws the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or its Estate or to prejudice in any manner the rights of the Debtor or any Person in any further proceeding; and (b) the result shall

be the same as if the Confirmation Order were not entered, the Plan were not filed, and the Effective Date had not occurred.

### 6.9 Release of Debtor Guaranty

Any guaranty(ies) executed by the Debtor shall be terminated and shall be released as of the Effective Date. To the extent, and only to the extent, that a Person was entitled to bring immediate action against the Debtor to recover a claim subject to any guaranty, indemnity, or such agreement (but for the automatic stay), such Person shall have a Claim for the payment of such claim, but such Claim shall become an Allowed Claim only to the extent that it is timely and properly asserted. Notwithstanding the foregoing, no Claim shall be allowed to the extent that it was contingent on the Petition Date if such Claim was an Unsecured Claim or on the Effective Date if such Claim was a Secured Claim.

### 6.10 Preservation of Insurance Policies

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any insurance policies that may cover any claim against the Debtor or any other Person as of the Effective Date.

## ARTICLE VII – GDR TRUST

### 7.1 Establishment of the GDR Trust

On or before the Effective Date, the Debtor shall (i) to the extent necessary, execute the GDR Trust Agreement in substantially the form attached as "Exhibit 1" hereto, (ii) take all other steps necessary or appropriate to establish the GDR Trust, and (iii) to the extent necessary, execute all documents required to provide the GDR Trust with a security interest in the Reorganized Debtor's receivables, as set forth in section 4.4 of the Plan.

The GDR Trust will be organized for the benefit of Holders of Allowed Class 4 Claims and for the purposes set forth in the attached Trust Agreement, the terms of which are deemed approved by entry of the Confirmation Order.

### 7.2 GDR Trustee

Initially, Michael Kaliner (the "Initial GDR Trustee") shall be the GDR Trustee. The salient terms of the GDR Trustee's employment, including the GDR Trustee's duties and compensation, to the extent not set forth in the Plan or the Confirmation Order, shall be set forth in the GDR Trust Agreement. The GDR Trustee shall have limited fiduciary duties to the beneficiaries of the GDR Trust, but only to the extent provided in the GDR Trust Agreement. The GDR Trust Agreement shall specify the terms and conditions of the GDR Trustee's compensation, responsibilities, and powers. It shall not be a prerequisite to service as a GDR Trustee that a Person be a disinterested person as defined by § 101(14) of the Bankruptcy Code.

The duties and powers of the GDR Trustee shall include, without limitation, the following:

(a)    To maintain the Disbursing Account and take other actions consistent with the Plan and the implementation hereof;

(b)    To make Distributions to Holders of Allowed Class 4 Claims from the Disbursing Account as set forth in section 4.4 of the Plan;

(c)    To prosecute and/or settle Chapter 5 Claims, if any, participate in or initiate any proceeding before the Court or any other court of appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, litigate or settle such Chapter 5 Claims on behalf of the GDR Trust, and/or pursue to settlement or judgment such actions;

(d)    To enter into any agreement or execute any document required by or consistent with the Plan and perform all of the obligations of the GDR Trustee thereunder;

(e)    To retain, without further approval of the Court, professionals, employees and consultants on behalf of the GDR Trust for services of professionals, disbursements, expenses, or related support services relating to the implementation of the Plan.  Professionals retained by the GDR Trust shall submit invoices to the GDR Trustee, who shall have the authority to pay all reasonable amounts of such invoices without further order of the Court.

### 7.3    Distribution Provisions Related to Class 4 Distributions

All funds intended for distribution to Holders of Class 4 Claims under the Plan shall be transferred to the GDR Trust to be deposited into the Disbursing Account by the GDR Trustee. Only the GDR Trustee will have access to the Disbursing Account.  Only the GDR Trustee will have check-writing authority from the Disbursing Account.

### 7.4    Resignation, Death or Removal of GDR Trustee

The GDR Trustee may resign at any time upon 30 days' written notice by filing a notice of resignation with the Court.  For cause, the Court may remove or replace the GDR Trustee.  In the event that the Person serving as GDR Trustee resigns, dies, or is removed from that office before the affairs of the GDR Trust and/or the Debtor are fully wound up, the Court shall appoint a new Person to serve as GDR Trustee under such terms as the Court deems appropriate.  No successor GDR Trustee shall in any event have any liability or responsibility for the acts or omissions of his or her predecessors. Every successor GDR Trustee shall execute, acknowledge, and file with the Court a notice of such appointment hereunder, and thereupon such successor GDR Trustee, without any further act other than as provided in the GDR Trust Agreement, shall become fully vested with all of the rights, powers, duties, and obligations of the office of GDR Trustee.

### 7.5    Chapter 5 Claims

On the Effective Date, all Chapter 5 Claims shall be deemed transferred to the GDR Trust and may thereafter be prosecuted, settled, or abandoned with or without Court approval by the GDR Trustee. Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by such claimant, if the Debtor or the GDR Trustee has taken action to recover, or given notice to the applicable party of

intent to take such action, on a Chapter 5 Claim against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Chapter 5 Claim is resolved by Final Order or otherwise in accordance with this section.

### 7.6    Retention of Actions and Defenses

Except as otherwise set forth herein, all Chapter 5 Claims shall be and hereby are preserved for the benefit of the beneficiaries of the GDR Trust, and shall be and hereby are deemed to be among the assets transferred and assigned to the GDR Trust on the Effective Date. Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the GDR Trustee exclusively, pursuant to the provisions of the GDR Trust Agreement, and the GDR Trustee shall or shall not pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with the GDR Trustee's sole judgment of what is in the best interests, and for the benefit of, the beneficiaries of the GDR Trust.  The Debtor and the Reorganized Debtor shall cooperate in any investigation, prosecution, and/or resolution (by settlement, trial or otherwise) of each and every Chapter 5 Claim.

## ARTICLE VIII - DISTRIBUTIONS

### 8.1    Objections to and Estimation of Claims

The Reorganized Debtor may attempt to resolve consensually any disputes regarding the existence, validity, priority, security, or amount of any Claim. The Reorganized Debtor has the exclusive right to object to the allowance of any Claim and may file with the Bankruptcy Court any other appropriate motion or adversary proceeding with respect thereto. All such objections may be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle with or without the approval of the Bankruptcy Court, withdraw, or resolve by any other method approved by the Bankruptcy Court (including but not limited to methods previously approved by the Bankruptcy Court during the Chapter 11 Case), any objections to any Claim.

In addition, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate, pursuant to § 502(c) of the Bankruptcy Code, any Claim that is disputed, contingent, or unliquidated, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount of such estimation will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Any Claim may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

8.2     **Claims Filed After Objection Deadline**

Any Claim (other than a Professional Fee Claim) not otherwise an Allowed Claim arising from, or evidenced by, a proof of claim or application filed after any deadline imposed by the Bankruptcy Court or the Plan (or if none, after the Confirmation Date) shall be deemed a Disallowed Claim without further order of the Bankruptcy Court, but the Reorganized Debtor shall be permitted, in its sole discretion, to object to Allowance of such Claim and seek an Order disallowing it. The Holder of a Claim may seek allowance of a Disallowed Claim described in this section, but the Reorganized Debtor shall not be required to (but may in its sole discretion) withhold a full or partial reserve of Cash with respect to such Disallowed Claim until the Reorganized Debtor receives actual notice that it has become an Allowed Claim. Any disbursement of assets of the Reorganized Debtor, including but not limited to any distribution, shall not be affected by its reversal or modification on appeal to the extent such disbursement was received by the transferee in good faith, regardless of whether the transferor knew of the pendency of the appeal.

8.3     **No Recourse to Reorganized Debtor**

Notwithstanding that any particular Disputed Claim or Disallowed Claim may be reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no holder of a Claim shall have recourse against the Debtor, the Reorganized Debtor, or any of their respective professionals, or their successors or assigns, or the holder of any other Claim, or any of their respective property, other than for acts constituting willful misconduct or gross negligence. However, nothing in the Plan shall modify any right of a holder of a Claim under § 502(j) of the Bankruptcy Code. Thus, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

8.4     **Transmittal of Distributions and Notices**

(a)     Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first-class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or its authorized agent. Absent any of the foregoing, the address set forth in the relevant Schedule of Assets and Liabilities for that Person may be used. Property or notices distributed in accordance with this section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.

(b)     A holder of a Claim or Interest may designate a different address for notices and distributions by notifying the Debtor (before the Effective Date) or the Reorganized Debtor (after the Effective Date) of that address in writing. Such notification shall be effective upon the Reorganized Debtor's actual notice of same.

### 8.5 Unclaimed Property

If any distribution remains unclaimed for a period of 60 days after the payment or other evidence of the distribution (such as a stock certificate) is mailed or otherwise delivered to the Holder of an Allowed Claim entitled thereto, the distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to that distribution or any later distributions except as otherwise ordered by the Bankruptcy Court. All right, title and interest in and to Unclaimed Property shall immediately vest in the Reorganized Debtor, <u>subject</u>, <u>however</u>, to the Reorganized Debtor's sole discretion to distribute Unclaimed Property to holders entitled thereto if such holders are subsequently located.

### 8.6 Withholding Taxes and Expenses of Distribution

Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes, and the Reorganized Debtor shall be authorized to withhold distributions on such Claims until the requisite information is received. If such information is not received within 90 days after the relevant distribution date, any distributions to the Persons holding such Claims shall be retained by the Reorganized Debtor as Unclaimed Property. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto.

### 8.7 Disputed Payment

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Disbursing Agent may, in lieu of making such distribution, hold such distribution in escrow or deposit such distribution into the registry of the Bankruptcy Court, until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

### 8.8 Distribution Record Date

After entry of the Confirmation Order, the right of the holder of a Claim or Interest to transfer such Claim or Interest to another Person with the intention of receiving any distribution on account of thereof shall terminate, and the Disbursing Agent shall not be required to (but in its sole and absolute discretion may) give effect to any purported transfer(s) that become effective thereafter for purposes of any distributions made under this Plan.

### 8.9 Setoffs

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtor or the Reorganized Debtor may, pursuant to applicable law, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a distribution shall be made and before any distribution is made on account of such Claim) any and all of the claims, rights, and causes of action of any nature that the Debtor, the Estate or the Reorganized Debtor may hold against the holder of such Claim. Any and all rights of setoff of the Debtor are hereby preserved and shall be

transferred and assigned to the Reorganized Debtor and be enforceable by the Reorganized Debtor in the same manner and to the same extent that the Debtor could have exercised such rights of setoff.

Except as otherwise agreed or provided in the Plan, neither the failure to effect a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the Reorganized Debtor, nor any provision of this Plan or the Confirmation Order shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, rights, and causes of action that the Debtor or the Reorganized Debtor may assert against the holder thereof. To the extent that the Debtor or the Reorganized Debtor fails to set off against a creditor's Claim and seek to collect a claim from such creditor after making a distribution to such creditor pursuant to the Plan, the Debtor or the Reorganized Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor. The Reorganized Debtor may seek periodic Court approval for any such setoff or setoffs.

8.10 **Distribution Provisions**

(a)  **Method of Cash Distributions.** Any Cash payment to be made pursuant to the Plan will be in U.S. dollars (except as otherwise agreed with any respective transferee) and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(b)  **Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be deemed timely if made on the next Business Day.

(c)  **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution of Cash in excess of the Allowed amount set forth in this Plan. Except as otherwise expressly provided herein, no Claim (other than an Allowed Secured Claim) shall be Allowed, nor distribution made, to the extent that it is for interest accruing after the Petition Date.

(d)  **Minimum Distributions.** If the total distribution of Cash to be made to the holder of an Allowed Claim would be $50.00 or less in the aggregate under the Plan, then notwithstanding any contrary provision of this Plan, the Reorganized Debtor or the GDR Trustee may make a single cash payment to the Holder of such Allowed Claim rather than over twelve (12) quarters as contemplated herein.  If the Reorganized Debtor or the GDR Trustee elects to make such single payment, said payment will be in full and final payment of such Allowed Claim hereunder.

(e)  **Fractional Payments.** No payment of fractions of a dollar shall be made by the Reorganized Debtor.  If fractional payments or distributions would otherwise be called for, the actual payment shall be rounded to the nearest dollar.

## ARTICLE IX - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1    Assumption or Rejection of Executory Contracts and Unexpired Leases

On the Confirmation Date, all prepetition executory contracts and unexpired leases of the Estate shall be assumed by the Debtor under §§ 365 and 1123 of the Bankruptcy Code and assigned to the Reorganized Debtor, except (a) any executory contract or unexpired lease that is the subject of a separate motion for authority to reject filed pursuant to § 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease rejected pursuant to an order of the Bankruptcy Court.   Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article VIII if the Effective Date fails to occur for any reason.

With respect to each executory contract and unexpired lease to be assumed under the Plan, it is the Debtor's contention that there are no defaults, and that there will be no obligations under section 365(b) of the Bankruptcy Code.  In the event any non-Debtor party to an assumed executory contract or unexpired lease disputes the Debtor's contention or contends that it is entitled to any other relief in connection with the assumption, then any such dispute in contention must be raised by a motion filed by the non-debtor party at least fifteen (15) days prior to the date noticed for the Confirmation Hearing.  Any party that fails to file the motion in a timely manner shall be deemed to have waived any and all objections to assumption of the executory contract or unexpired lease.

### 9.2    Postpetition Executory Contracts or Unexpired Leases

Any postpetition executory contract or unexpired lease to which the Debtor is a party shall on the Effective Date automatically be deemed assigned by the Debtor to the Reorganized Debtor without recourse.

## ARTICLE X - EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 10.1    Releases, Exculpation and Related Injunction

(a)    **Satisfaction of Claims and Interests in the Debtor.** The treatment to be provided for respective Allowed Claims against or Interests in the Debtor pursuant to the Plan shall be in full satisfaction, settlement, and release of such respective Claims and Interests. Except as otherwise expressly provided for herein, any claims of the Debtor or the Estate against the Holders of any Allowed Claims or Interests shall not be deemed compromised and are expressly preserved upon confirmation of the Plan.

(b)    **Debtor's Releases.**  Pursuant to § 1123(b) of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Plan, the Debtor shall be deemed to forever waive, release, and discharge all Released Parties from and with respect to all claims (including but not limited to Claims), obligations, suits, causes of action, demands, judgments, debts, rights, liabilities,

losses, whether known or unknown, in law or in equity, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, direct or derivative, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in any way relating to the Debtor, the Debtor's business or affairs, the Chapter 11 Case, the Plan, or the Disclosure Statement that have been or could have been asserted by or on behalf of the Debtor against the Released Parties as of the Effective Date. The release of all such claims in favor of the Released Parties shall bind all creditors, shareholders, the Reorganized Debtor, and other parties in interest in the Chapter 11 Case. ANY SUCH RELEASE SHALL ADDITIONALLY ACT AS AN INJUNCTION AGAINST ANY PERSON, INCLUDING BUT NOT LIMITED TO THE DEBTOR AND THE REORGANIZED DEBTOR AND ANY PERSON PURPORTING TO ACT ON THE DEBTOR AND/OR THE REORGANIZED DEBTOR'S BEHALF, FROM COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM THAT IS SO RELEASED. Without limitation, the foregoing release shall include any claims which were available to Persons outside of bankruptcy but which the Estate became entitled to enforce under § 544 of the Bankruptcy Code.

(c)     **Third Party Releases.** As of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as otherwise expressly provided in the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim that receives consideration under this Plan shall be deemed to have forever covenanted with the Debtor and with each of the Released Parties to waive, release, and discharge all claims, obligations, suits, causes of action, demands, judgments, debts, rights, liabilities, losses, whether known or unknown, in law or in equity, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Effective Date in any way relating to the Debtor, the Debtor's business or affairs, the Chapter 11 Case, the Plan, or the Disclosure Statement that could have been asserted by such holder of a Claim or Interest against the Released Parties as of the Effective Date.


(d)     **Release of Liens and Perfection of Liens**. Except as otherwise specifically provided in the Plan or in any agreement, instrument, or document created in connection with the Plan, each holder of a Secured Claim and/or Lien, regardless of whether such holder holds an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (i) turn over and release to the Debtor or the Reorganized Debtor, as the case may be, any and all property of the Debtor or the Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor, the Estate, or the Reorganized Debtor, be deemed released; and (ii) execute such documents and instruments as the Reorganized Debtor requires to evidence such holder's release of such property or Lien.

If such holder does not execute the appropriate documents or instruments, the Reorganized Debtor may, in its sole discretion, file or record a copy of the Confirmation Order which shall serve to release such holder's rights in such property. Any such action by the Reorganized Debtor shall be at the holder's expense, and the Reorganized Debtor shall be

entitled to recover from such holder all costs, including but not limited to actual attorney's fees on account of such action, and/or to set off such costs against any distribution to be made to the holder.

Without limiting the release provisions of the immediately preceding subparagraph and except as otherwise agreed by the Reorganized Debtor: (i) no distribution hereunder shall be made on account of any Claim or Interest unless and until the holder thereof executes and delivers to the Debtor or the Reorganized Debtor (as applicable) such release of Liens or otherwise turns over and releases such Cash, pledge, or other possessory Liens; and (ii) any such holder that fails to execute and deliver such release within 90 days after the Effective Date shall be deemed to have no Claim or Interest and shall not receive any distribution under the Plan.

(e)     **Discharge of Debtor and Injunction.**

(1)     Except as otherwise provided in this Plan, the rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor, or any of its assets or properties.  Except as otherwise provided in the Plan or the Confirmation Order: (i) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all Claims and Interests, including, but not limited to, demands, liabilities, Claims and Interests that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof a Claim or proof of Interest based on such debt or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim or Interest based on such debt or Interest is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan; and (ii) all Entities shall be precluded from asserting against the Reorganized Debtor, its successors or its assets or properties any other or further Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against any and all debts and liabilities of the Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged.

(2)     Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all Entities who have held, currently hold or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, their successors or their respective assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, aware, decree or order against the Debtor, the Reorganized Debtor, their successors or their respective assets or properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, their successors or their respective assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor,

the Reorganized Debtor, their successors or their respective assets or properties; and (v) commencing or continuing, any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Any Entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

(f) **Indemnification.** Notwithstanding anything to the contrary in this Plan, the Debtor's obligations to indemnify Persons who served during the Chapter 11 Case as the Debtor's members, employees, and professionals existing under applicable non-bankruptcy law (whether arising under contract, bylaw, or articles of organization) with respect to all present and future actions, suits, and proceedings against any of such indemnified Persons, based upon any act or omission related to service with, for, or on behalf of the Debtor at any time during the period from the Petition Date through the Effective Date (including but not limited to acting as employee benefit plan fiduciaries or employee benefit administrative trustees), in all cases net of applicable insurance proceeds, other than for acts constituting willful misconduct or gross negligence shall not be released and shall be deemed assumed by the Reorganized Debtor on the Effective Date.

(g) **Exculpation.** The Released Parties and any property of or professionals retained by such parties, or direct or indirect predecessor-in-interest to any of the foregoing Persons, will not have or incur any liability to any Person for any act taken or omission occurring on or after the Petition Date in connection with or related to the Debtor or the Reorganized Debtor, including but not limited to (i) the Debtor's consent to the entry of an order for bankruptcy relief and request for conversion of the case to a case under Chapter 11 of the Bankruptcy Code; (ii) the administration of the Chapter 11 Case, (iii) the operation of the Debtor's business during the pendency of the Chapter 11 Case, (iv) the formulating, preparing, disseminating, implementing, confirming, consummating, and administering of the Plan (including soliciting acceptances or rejections thereof); (v) the submission of and statements made in, the Disclosure Statement or any contract, instrument, release, or other agreement or document entered into, or any action taken or omitted to be taken in connection with the Plan; and (vi) any distributions made pursuant to the Plan, except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The entry of the Confirmation Order shall constitute a determination by the Bankruptcy Court that the Debtor and each of its members, professionals, employees, members, trustees, agents, attorneys, financial advisors, partners and accountants that served during the Chapter 11 Case have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among other provisions of law, sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the foregoing.

## ARTICLE XI - CONDITIONS TO CONFIRMATION AND CONSUMMATION

### 11.1 **Conditions to Consummation**

The Effective Date shall occur upon the Debtor's filing of an appropriate notice with the Bankruptcy Court in the Chapter 11 Case, although such notice may be filed after the Effective

Date and relate back to the Effective Date retroactively. This Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied, except as any such condition(s) shall be waived by the Debtor in its sole discretion.

(a)     The Confirmation Order shall have been entered by the Bankruptcy Court;

(b)     The Debtor determines, in its sole discretion, that it has sufficient Cash on hand to make timely distributions sufficient (including any necessary reserves) to make payments in respect of all Claims entitled to payments of Cash on (or as soon as reasonably practicable after) the Effective Date; and

(c)     The Reorganized Debtor shall have been created in accordance with the terms of the Plan.

## 11.2    Effect of Non-Occurrence of the Conditions to Consummation

After entry of the Confirmation Order, if one or more of the conditions to consummation has not been satisfied and the Debtor determines that it is impossible or unlikely that such condition(s) will be satisfied, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or Interests in, the Debtor.

## ARTICLE XII - RETENTION OF JURISDICTION

### 12.1    Retention of Jurisdiction

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction to the extent the Bankruptcy Court had jurisdiction immediately prior to the Confirmation Date (or to the extent that the Bankruptcy Court subsequently acquires jurisdiction), including but not limited to for the following purposes:

(i)     To determine the allowability, classification, or priority of Claims upon objection by the Debtor the Reorganized Debtor, or any other party in interest entitled to file an objection, and the validity, extent, priority, and avoidability of Liens;

(ii)     To issue injunctions, take such other actions, or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date;

(iii)     To protect the property of the Estate, including Litigation Claims and Chapter 5 Claims, from claims against, or interference with, such property, including but not

limited to actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens on any property of the Estate or the Reorganized Debtor;

(iv)     To determine any and all applications for allowance of Professional Fee Claims and any disputes concerning post-Effective Date professional or other services to the extent not otherwise resolved;

(v)     To determine the validity, priority, amount, avoidability, and/or classification of any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims, any other request for payment of claims or expenses entitled to priority under § 507(a) of the Bankruptcy Code;

(vi)     To approve, or to resolve any dispute related to, the making of distributions hereunder including but not limited to any reserves required;

(vii)     To determine any and all motions related to the rejection, assumption, and/or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to § 0 of the Plan;

(viii)     To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case, including any remands;

(ix)     To modify the Plan under § 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose;

(x)     To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code;

(xi)     To determine any and all proceedings to set aside Liens or to recover any transfers, assets, properties or damages to which the Debtor (and after the Effective Date, the Reorganized Debtor) may be entitled under applicable provisions of the Plan, the Bankruptcy Code, or any other federal, state, or local laws;

(xii)     To determine any tax liability pursuant to § 505 of the Bankruptcy Code;

(xiii)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(xiv)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the hearing to consider approval of the Disclosure Statement, or the Confirmation Hearing, or for any other noticing purpose relating to the Chapter 11 Case;

(xv)     To hear and adjudicate Litigation Claims and Chapter 5 Claims;

(xvi)　To resolve any disputes concerning, and to enforce, any release, waiver, discharge, or exculpation hereunder or any injunction against acts, employment of process, or actions arising hereunder;

(xvii)　To determine the validity, priority, amount, and/or classification of any Claim or Interest, and/or the existence, extent, priority avoidability and/or adequacy of perfection of any Lien securing such Claim or Interest;

(xviii)　To approve any settlement entered into or offset exercised by the Reorganized Debtor in connection with allowance of, or distribution on account of, any Claim or Interest, to the extent required hereunder or to the extent that the Reorganized Debtor determines in its sole discretion that approval is appropriate or advisable under the circumstances;

(xix)　To enter a Final Order closing the Chapter 11 Case; and

(xx)　To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under the Bankruptcy Code, including but not limited to § 105(a) thereof.

12.2　**Retention of Jurisdiction Does Not Limit Reorganized Debtor's Powers**

Notwithstanding any of the foregoing provisions for the Bankruptcy Court's retention of jurisdiction, any right, privilege, or power of the Debtor or the Reorganized Debtor shall not require approval of the Bankruptcy Court except to the extent required under the Plan, but the Debtor or the Reorganized Debtor may apply to the Bankruptcy Court for approval, instructions, or clarification regardless of whether specified therein.

## ARTICLE XIII - ADMINISTRATIVE PROVISIONS

13.1　**Amendments**

(a)　**Pre-Confirmation Amendment.** The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement meet any applicable requirements under the Bankruptcy Code. The Debtor shall also be permitted to file an exhibit or supplement containing the form of articles of organization and bylaws of the Reorganized Debtor without resoliciting acceptances of the Plan, so long as those documents do not contain provisions inconsistent with the Plan.

(b)　**Post-Confirmation Amendment Not Requiring Re-Solicitation.** After the entry of the Confirmation Order, the Debtor or the Reorganized Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtor shall obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Allowed Claims or Interests under the Plan.

(c) **Post-Confirmation/Pre-Consummation Amendment Requiring Re-Solicitation.** After the Confirmation Date and before substantial consummation of the Plan, the Debtor or the Reorganized Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, or treatment of Allowed Claims or Interests, provided that: (i) the Plan, as modified, meets any applicable requirements under the Bankruptcy Code; (ii) the Debtor or the Reorganized Debtor shall obtain Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting (and entitled to vote) in each Class affected by such modification; and (iv) the Debtor or the Reorganized Debtor shall comply with the provisions of the Bankruptcy Code, including § 1125 of the Bankruptcy Code, with respect to the Plan as modified, but only as to such classes as shall have Claims or Interests materially or adversely affected by such modification.

13.2 **Dissolution of Committee**

Upon the Effective Date, the Committee shall dissolve and cease its existence.

13.3 **Post-Effective Date Expenses and Reports.**

The Reorganized Debtor is empowered to pay all professional fees, U.S. Trustee fees, and other expenses incurred by the Reorganized Debtor or the Disbursing Agent from and after the Effective Date, and otherwise deal with property transferred by the Debtor to the Reorganized Debtor, without the necessity of application to, or further order of, the Bankruptcy Court, but the Bankruptcy Court retain jurisdiction to resolve any relevant disputes. The Reorganized Debtor shall file such reports as required until the entry of a final decree closing this Chapter 11 Case.

13.4 **Post Confirmation Notice.**

Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Debtor, counsel to TD Bank, and all persons on the Debtor's Bankruptcy Rule 2002 service list. With the exception of the Debtor, TD Bank and the U.S. Trustee's Office, any entity desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtor within 30 days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Debtor's Bankruptcy Rule 2002 service list upon the Effective Date.

13.5 **Successors and Assigns**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

### 13.5 Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal laws or rules apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflict of laws.

### 13.6 Courts of Competent Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### 13.7 Corporate Action

The dissolution of the Debtor and the other matters provided for under the Plan involving the corporate or entity structure of the Debtor, or corporate action, as the case may be, to be taken by or required of the Debtor, shall be deemed to have occurred and be effective as provided herein and shall be authorized and approved in all respects, without any requirement of further action by members of the Debtor or the Reorganized Debtor, as the case may be.

### 13.8 Effectuating Documents and Further Transactions

The Debtor and the Reorganized Debtor are authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions, as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan.

### 13.9 Cramdown

The Debtor requests confirmation of the Plan under § 1129(b) of the Bankruptcy Code with respect to any Class that does not accept, or is deemed not to have accepted, this Plan pursuant to § 1126(g) of the Bankruptcy Code. The Debtor reserves the right to (i) request confirmation of this Plan under § 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to § 1126 of the Bankruptcy Code and (ii) to modify this Plan to the extent, if any, that confirmation of this Plan under § 1129(b) of the Bankruptcy Code requires modification.

### 13.10 Confirmation Order and Plan Control

To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement and any other agreement entered into between or among the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Bankruptcy Court) controls the Plan.

13.11 **Severability**

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.12 **Rules of Construction**

(a)    **Undefined Terms.** Any term used herein that is not defined herein shall have the meaning ascribed to such term in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b)    **Miscellaneous Rules.** (i) The terms "herein," "hereof," "hereunder," "under the Plan," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; and shall also refer to the Confirmation Order except as expressly provided; (ii) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan and the Confirmation Order, except to the extent otherwise provided therein respectively; (iii) any reference to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented; (iv) in computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply as that rule existed on the Confirmation Date; and (v) whenever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

13.13 **Final Decree**

Once the Estate has been fully administered pursuant to Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

13.14 **Deadlines**

To the extent that the Plan, the Confirmation Order, or any other document approved or incorporated into same sets forth any deadline or bar date, such deadline may be enlarged or shortened by the Bankruptcy Court in accordance with Fed. R. Bankr. P. 9006, as that rule existed on the Confirmation Date.

### 13.15  Notices

All notices or requests to the Debtor in connection with the Plan shall be in writing and deemed to have been given three Business Days after mailing, one Business Day after sending by overnight courier, or on the same day upon service by electronic transmission, addressed to:

> Donna L. Harris, Esquire
> Pinckney, Harris & Weidinger, LLC
> 1220 North Market Street, Suite 950
> Wilmington, DE 19801
> *Counsel for the Debtor*

> with copies to:

> Shannon D. Leight, Esquire
> Ciardi Ciardi & Astin
> 919 Market Street, Suite 700
> Wilmington, DE 19803
> *Counsel for the Committee*

### 13.16  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including but not limited to liability on any Claim or the propriety of a Claim's classification.

Dated: February 28, 2011                    GLOBAL DEMOLITION & RECYCLING, LLC

by: _Albert Arillotta_  Managing Member
Albert Arillotta, Managing Member


APPROVED BY COUNSEL:

PINCKNEY, HARRIS & WEIDINGER, LLC

**/s/ Donna L. Harris**
Donna L. Harris (DE No. 3740)
1220 North Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 telephone
(302) 442-7046 facsimile
*Counsel for the Debtor*

and

CIARDI CIARDI & ASTIN

**  /s/ Shannon D. Leight**
Shannon D. Leight (DE No. 4115)
919 Market Street, Suite 700
Wilmington, Delaware 19803
(302) 658-1100 telephone
(302) 658-1300 facsimile
*Counsel for the Committee*